No. 2026-1315, 2026-1793

# IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

DHS PROBATIONARY EMPLOYEES 1 CLASS, ROBERT HORTON, LILIA IRIZARRY, JEFFREY SMYLY,
Petitioners,

v.

DEPARTMENT OF HOMELAND SECURITY, DIRECTOR OF THE OFFICE OF PERSONNEL MANAGEMENT,
Respondents.

and

INTERIOR PROBATIONARY EMPLOYEES CLASS, ALLISON KEATING, MATTHEW McANULTY, SAMUEL PETERSON,
Petitioners,

v.

DEPARTMENT OF THE INTERIOR, OFFICE OF PERSONNEL MANAGEMENT,
Respondents.

Petition For Review from the Merit Systems Protection Board in Nos. DC-0752-25-1781-I-1, DC-0752-25-1550-I-1

## RESPONDENTS' BRIEF


*Of Counsel:*

MICHELLE L. PERRY
*Senior Attorney-Advisor*
*Department of Homeland Security*
*Washington, DC 20024*

RYAN BURTON
*Attorney Advisor*
*Department of the Interior*
*Lakewood, CO 80215*

BRETT A. SHUMATE
*Assistant Attorney General*
PATRICIA M. McCARTHY
*Director*

ELIZABETH M. HOSFORD
MATTHEW J. CARHART
*Attorneys, Commercial Litigation Branch*
*Civil Division, U.S. Department of Justice*
*P.O. Box 480, Ben Franklin Station*
*Washington, DC 20044*
*(202) 307-0313*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ iii

STATEMENT OF RELATED CASES ........ viii

STATEMENT OF JURISDICTION ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 2

I. Statutory and Regulatory Background ........ 2

II. Factual Background and Prior Proceedings ........ 11

SUMMARY OF THE ARGUMENT ........ 19

ARGUMENT ........ 21

I. Standard of Review ........ 21

II. The Board Correctly Concluded That It Lacked Jurisdiction Over Petitioners' Claims ........ 22

A. Because DHS and Interior Exercised Their Broad Authority To Terminate Probationary Employees, The Terminations Are Unreviewable By The Board ........ 22

1. DHS And Interior Relied Upon Their Authority To Terminate Probationary Employees ........ 23

2. Because The Challenged Terminations Were Predicated Upon Agency Authority To Terminate Probationary Employees, The Board Correctly Held That It Lacked Jurisdiction ........ 26

3. Petitioners Cannot Evade The Board's Jurisdictional Limitations By Attacking The Agencies' Fitness Determinations ........ 32

B. The RIF Regulations Neither Apply When Agencies Rely Upon Their Authority To Terminate Probationary Employees Nor Authorize Board

Jurisdiction Over Exercises Of Agency Authority To Terminate Probationary Employees....................35

1. Agencies Are Not Required To Follow RIF Regulations When They Rely Upon A Separate Authority To Terminate Employees....................35

2. The Cases Relied Upon By Petitioners Do Not Support The Exercise Of Board Jurisdiction Here....................39

3. Petitioners' Policy Concerns Are Misplaced....................42

C. Even Assuming That The RIF Regulations Apply When An Agency Relies Upon A Separate Source Of Authority, The Agencies Did Not Eliminate Jobs Or Undertake A Reorganization....................43

1. The RIF Regulations Are Not Applicable Here Because No Positions Were Abolished And The Agency Did Not Act For Any Of The Reasons Identified In Section 351.201....................44

2. Petitioners Fail To Establish Either That Positions Were Abolished Or That A Reorganization Occurred....................47

III. Petitioners' Separation-of-Power Claims Lack Merit....................50

CONCLUSION....................53

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

Page(s)

*Cases*

*Am. Fed'n of Gov't Emp.*, *AFL-CIO v. Pierce*,
697 F.2d 303 (D.C. Cir. 1982) ....................................................................................53

*Bacon v. HUD*,
757 F.2d 265 (Fed. Cir. 1985) .......................................................... 26, 41, 45, 48

*Baker v. Dep't of Homeland Sec.*,
99 M.S.P.R. 92 (2005) ..............................................................................................39

*Bante v. MSPB*,
966 F.2d 647 (Fed. Cir. 1992) ................................................................... 11, 31

*Baxter v. United States*,
136 F. Supp. 748 (Ct. Cl. 1954) ................................................................. 23, 24

*Bielomaz v. Dep't of Navy*,
86 M.S.P.R. 276 (2000) ............................................................................................29

*Blalock v. Dep't of Agriculture*,
28 M.S.P.R. 17 (1985) ..............................................................................................39

*Brown v. United States*,
39 Ct. Cl. 255 (1904) ................................................................................................30

*Butler v. Social Sec. Admin.*,
331 F.3d 1368 (Fed. Cir. 2003) ................................................................................22

*Campion v. M.S.P.B.*,
326 F.3d 1210 (Fed. Cir. 2003) ....................................................................... 49, 50

*Carter v. Small Business Admin.*,
23 M.S.P.R. 309 (1984) ............................................................................................40

*Connolly v. United States,*
554 F. Supp. 1250 (1982) ...........................................................................................5

*Cross v. Dep't of Transp.,*
127 F.3d 1443 (Fed. Cir. 1997) ................................................................................35

*Dalton v. Specter*,
511 U.S. 462 (1994) ..................................................................................................52

*Elmore v. Dep't of Transp.*,
421 F.3d 1339 (Fed. Cir. 2005) ................................................................................51

*Ford Motor Co. v. United States*,
926 F.3d 741 (Fed. Cir. 2019) ..................................................................................45

*Gandola v. F.T.C.*,
773 F.2d 308 (Fed. Cir. 1985) ...................................................................36, 41, 44

*Garcia v. Dep't of Homeland Sec.*,
437 F.3d 1322 (Fed. Cir. 2006) .................... 10, 17, 22, 23
*Grier v. Dep't of Health and Human Services*,
750 F.2d 944 (Fed. Cir. 1984) .................... 35
*Hilton v. Forrestal*,
165 F.2d 251 (D.C. Cir. 1947) .................... 8
*Hilton v. Sullivan*,
334 U.S. 323 (1948) .................... 8
*Holland v. MSPB*,
796 Fed. App'x 1018 (Fed. Cir. 2020) .................... 7, 19, 25
*Holmes v. Dep't of Army*,
41 M.S.P.R. 612 (1989) .................... 39, 40
*Huber v. MSPB*,
793 F.2d 284 (Fed. Cir. 1986) .................... 46
*In re Hennen*,
38 U.S. 230 (1839) .................... 2, 3, 53
*James v. Von Zemenszky*,
284 F.3d 1310 (Fed. Cir. 2002) .................... 40
*Keim v. United States*,
177 U.S. 290 (1900) .................... 4
*King v. Jerome*,
42 F.3d 1371 (Fed. Cir. 1994) .................... 25, 44
*Lewis v. Federal Bureau of Prisons*,
93 F.4th 1381 (Fed. Cir. 2024) .................... 7
*Losure v. ICC*,
2 M.S.P.R. 195 (1980) .................... 46
*Lovshin v. Dep't of the Navy*,
767 F.2d 826 (1985) .................... 17, 25, 38
*Lowmack v. Dep't of Navy*,
80 M.S.P.R. 491 (1999) .................... 29, 30
*Manescalchi v. U.S. Postal Service*,
74 M.S.P.R. 479 (1997) .................... 37
*Markham v. Cabell*,
326 U.S. 404 (1945) .................... 38
*Maryland v. U.S. Dep't of Agriculture*,
151 F.4th 197 (4th Cir. 2025) .................... 16, 32
*Maryland v. U.S. Dep't of Agriculture*,
770 F. Supp. 3d 432 (D. Md. 2025) .................... 32
*Maryland v. U.S. Dep't of Agriculture*,
777 F. Supp. 3d 432 (D. Md. 2025) .................... 16

*Mastriano v. F.A.A.*,
714 F.2d 1152 (Fed. Cir. 1983) .......... 28, 29, 32
*Mays v. MSPB*,
301 Fed. App'x 988 (Fed. Cir. 2008) .......... 28
*McGuffin v. Social Security Administration*,
942 F.3d 1099 (Fed. Cir. 2019) .......... 31
*Meese v. Keene,*
481 U.S. 465 (1987) .......... 47, 48
*Michigan* v. *EPA*,
576 U.S. 743 (2015) .......... 26
*Morgan v. Principi*,
327 F.3d 1357 (Fed. Cir. 2003) .......... 38
*Mueller v. U.S. Postal Service*,
76 F.3d 1198 (Fed. Cir. 1996) .......... 36
*N.L.R.B. v. Noel Canning*,
573 U.S. 513 (2014) .......... 37
*Nadelhaft v. United States*,
132 Ct. Cl. 316 (1955) .......... 31, 38
*National Treasury Employee Union v. Horner*,
854 F.2d 490 (D.C. Cir. 1988) .......... 34
*Nat'l Treasury Employees Union v. FLRA*,
737 F.3d 273 (4th Cir. 2013) .......... 29
*Robinson v. U.S. Postal Service*,
63 M.S.P.R. 307 (1994) .......... 40
*Ruggles v. United States*,
45 Ct. Cl. 86 (1910) .......... 30
*Sampson v. Murray,*
415 U.S. 61 (1974) .......... 11, 31
*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) .......... 26
*Shaw v. United States*,
622 F.2d 520 (Ct. Cl. 1980) .......... 7
*Shillinger v. Dep't of Labor*,
47 M.S.P.R. 145 (1991) .......... 48, 50, 51
*Tippins v. United States*,
93 F.4th 1370 (Fed. Cir. 2024) .......... passim
*United States ex rel. Taylor v. Taft*,
24 App.D.C. 95 (D.C. Cir. 1904) .......... 3
*United States v. Connolly*,
716 F.2d 882 (Fed. Cir. 1983) .......... 5

*Wright v. F.A.A.*,
12 M.S.P.R. 545 (1982) ........ 41
*Yu v. Dep't of Army*,
28 Fed. App'x 968 (Fed. Cir. 2002) ........ 28, 32

*Statutes*

5 U.S.C. § 3302 ........ 34
5 U.S.C. § 3321 ........ 5, 34, 52
5 U.S.C. § 7511 ........ 5, 52
5 U.S.C. § 7703 ........ 1, 22
Pub. L. No. 78-359 ........ 8
Pub. L. No. 89-554 ........ 9
Pub. L. No. 299 ........ 8
Pub. L. No. 336 ........ 3

*Regulations*

5 C.F.R. § 11.2 (2026) ........ 6
5 C.F.R. § 12.101 (1938) ........ 4
5 C.F.R. § 12.101 (1938) ........ 30
5 C.F.R. § 315.801 (2000) ........ 6
5 C.F.R. § 315.803 ........ 6, 18
5 C.F.R. § 315.804 ........ 6, 19, 33
5 C.F.R. § 315.805 ........ 7, 10
5 C.F.R. § 315.806 ........ passim
5 C.F.R. § 351.201 ........ 10, 44, 47
5 C.F.R. § 351.203 ........ 10
5 C.F.R. § 351.204 ........ passim
5 C.F.R. § 351.501 ........ 29, 43
5 C.F.R. § 351.901 ........ 11, 12
5 C.F.R. § 1201.3 ........ 7, 10, 11, 27
5 C.F.R. § 1201.56 ........ 22
9 Fed. Reg. 9575 ........ 8
33 Fed. Reg. 12402 ........ 9
73 Fed. Reg. 20149-01 ........ 25
90 Fed. Reg. 26727 ........ 6
91 Fed. Reg. 49072 ........ 6

*Other Authorities*

Executive Order 14210 .......... 15, 50
Executive Order 14284 .......... 6

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court. The government is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(b).

## STATEMENT OF JURISDICTION

This Court possesses jurisdiction to review final decisions of the Merit Systems Protection Board (board or MSPB). 5 U.S.C. § 7703(b)(1). As we explain below, the board correctly concluded that it lacked jurisdiction over petitioners' allegations.

## STATEMENT OF THE ISSUES

1. Whether the board correctly concluded that it lacked jurisdiction to entertain appeals brought by petitioners, all of whom were probationary employees, challenging their terminations.

2. Whether petitioners have alleged a viable separation-of-powers claim based upon the theory that the Department of Homeland Security (DHS) and the Department of the Interior (Interior) were required to obtain Congressional approval before terminating the employment of petitioners, all of whom were probationary employees.

## STATEMENT OF THE CASE

### I. Statutory and Regulatory Background

*Probationary employment.* Before the imposition of civil service rules, it was generally recognized that courts did not interfere with executive agencies' power to remove employees. As an early case explained, "[i]t cannot, for a moment, be admitted, that it was the intention of the Constitution, that those offices which are denominated inferior offices should be held during life." *In re Hennen*, 38 U.S. 230, 259 (1839). "And if removable at pleasure, by whom is such removal to be made?" *Id.* "In the absence of all constitutional provision or statutory regulation it would seem to be a sound and necessary rule to consider the power of removal as incident to the power of appointment." *Id.* Thus, the Court explained that, as a departmental

secretary has power "to appoint all necessary clerks[,] . . . there can be no doubt, that these clerks hold their office at the will and discretion of the head of the department." *Id.*; *see also United States ex rel. Taylor v. Taft*, 24 App.D.C. 95, 98 (D.C. Cir. 1904) ("That the right of appointment carries with it the right of removal has been determined so many times that it would be useless to cite authority in support of the proposition. This power of removal, therefore, would seem to be unrestricted, except as controlled by legislation of Congress.").

Against this backdrop, Congress has enacted statutes that have regulated the process for hiring and removal of Federal employees. Of particular relevance, Congress has enacted the Pendleton Act, the Lloyd-La Follette Act, and the Civil Service Reform Act. Pendleton Civil Service Reform Act, Pub. L. No. 47-27, ch. 27, §§ 1-3, 22 Stat. 403, 406 (1883) (codified as amended in scattered sections of 5 U.S.C.); Lloyd-La Follette Act of 1912, Pub. L. No. 336, ch. 389, § 6, 37 Stat. 539, 555 (codified as amended in scattered sections of 5 U.S.C.); Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.). But even as Congress has regulated aspects of the relationship between Federal employees and employing agencies, the executive branch has maintained control over deciding whether a particular appointee is fit for appointment. As the Supreme Court explained, "[t]he appointment to an official position in the Government, even if it be simply a clerical position, is not a mere ministerial act, but

one involving the exercise of judgment." *Keim v. United States*, 177 U.S. 290, 293 (1900). "The appointing power must determine the fitness of the applicant; whether or not he is the proper one to discharge the duties of the position." *Id.* "Therefore it is one of those acts over which the courts have no general supervising power." *Id.*

The executive branch's responsibility for overseeing the fitness of applicants is reflected in the law governing probationary employment. The Pendelton Act of 1883 authorized the newly created Civil Service Commission to promulgate rules that reflected eight principles. 22 Stat. at 403-04. The fourth such principle was "that there shall be a period of probation before any absolute appointment or employment aforesaid." *Id.* at 404. And even as Congress imposed limitations on the removal of tenured employees through the passage of the Lloyd-La Follette Act in 1912, the Civil Service Commission explained that these protections did not apply to probationers. *See* U.S. Civ. Serv. Comm'n, Twenty-Ninth Annual Report 112 (1913) (explaining that "section 6 of the act of August 24, 1912, is not regarded as applying to probationers . . ."). Regulations from the Civil Service Commission confirmed that, even as Congress had established limits on the executive branch's authority to remove tenured employees, "[a] probationer may be separated from the service at any time during or at the expiration of the probationary period without further formality than a written notification setting forth the reasons in full." *See, e.g.*, 5 C.F.R. § 12.101(b) (1938).

The executive branch's authority over probationary appointment has persisted since then. When it recodified Title 5 in 1966, Congress enacted a law that (in its

current form) authorizes "[t]he President [to] take such action, including the issuance of rules, regulations, and directives, as shall provide as nearly as conditions of good administration warrant for a period of probation--(1) before an appointment in the competitive service becomes final; and (2) before initial appointment as a supervisor or manager becomes final." 5 U.S.C. § 3321(a). In 1978, Congress overhauled the system of Federal employment through the Civil Service Reform Act. But the CSRA did not alter the longstanding discretion afforded to the President regarding probationary employees. Interpreting the CSRA, this Court explained that the "probationary or trial period is an extension of the examining process to determine an employee's ability to actually perform the duties of the position." *United States v. Connolly*, 716 F.2d 882, 886 (Fed. Cir. 1983) (quoting S. Rep. No. 969, 95th Cong., 2d Sess. 45 (1978)). To similar effect, summarizing the legislative history of the CSRA, the United States Claims Court explained that "probationary employees are pointedly excluded. . . . The limitation on the rights of probationary employees was not an oversight; it was a conscious decision by Congress to afford federal managers great latitude in removing probationary employees before they became vested with the rights afforded tenured employees." *Connolly v. United States,* 554 F. Supp. 1250, 1257 (1982), *aff'd in part and rev'd in part,* 716 F.2d 882 (Fed. Cir. 1983). This is reflected, for instance, in Congress's choice to exclude probationary employees from the definition of "employee." 5 U.S.C. § 7511(a)(1)(A)(i). Ultimately, Congress "saw summary terminations as essential to an effective and efficient service, and it has repeatedly

acted to preserve the agencies' discretion summarily to remove probationary employees." U.S. *Dept. of Justice, I.N.S. v. FLRA*, 709 F.2d 724, 730 (D.C. Cir. 1983).

In the wake of the CSRA, the U.S. Office of Personnel Management (OPM) adopted regulations that govern probationary employment. These regulations provide that, when an employee is first hired to a position in the competitive service, she enters a probationary period. *See* 5 C.F.R. § 11.2 (2026); *see also* 5 C.F.R. § 315.801(a) (2000).[1] Agencies are required to "utilize the probationary period as fully as possible to determine the fitness of the employee," and must "terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment." 5 C.F.R. § 315.803(a).

Consistent with the statutory framework, the procedural protections afforded to probationary employees are limited. If an agency "decides to terminate" a probationary employee in the competitive service "because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action." 5 C.F.R. § 315.804(a).

[1] Consistent with Executive Order 14284, OPM has amended the regulations governing the probationary period. *See* Strengthening Probationary Periods in the Federal Service, 90 Fed. Reg. 26727 (June 24, 2025). OPM has also overhauled the process for probationers to challenge their terminations. *See* Streamlining Probationary and Trial Appeals, 91 Fed. Reg. 49072 (Aug. 3, 2026). None of these amendments apply to petitioners' appeal. As such, unless otherwise noted, we focus upon the regulations in effect at the time of the challenged terminations.

If an agency wishes to fire a probationary employee in the competitive service due to "conditions arising before his appointment," then it must provide specific notice of the proposed action, an opportunity to respond, and notice of adverse decision. 5 C.F.R. § 315.805. But, as we explain below, the remedies available to probationary employees in the competitive service at the board are "very narrow[.]" *Lewis v. Federal Bureau of Prisons*, 93 F.4th 1381, 1385 (Fed. Cir. 2024) (quoting *Shaw v. United States*, 622 F.2d 520, 528 (Ct. Cl. 1980)). None of the circumstances that permit board jurisdiction over probationary terminations—which are limited to arguments that the termination was "motivated by partisan political reasons or marital status" or, "if the termination was based on a pre-appointment reason," an argument that "the agency failed to take required procedures[,]" *see* 5 C.F.R. § 1201.3(a)(3)—are raised by petitioners in this appeal.

Section 315.806 does not apply to employees in the excepted service who are in their trial period. *See Holland v. MSPB*, 796 Fed. App'x 1018, 1024 (Fed. Cir. 2020) (unpublished). As a result, excepted service employees who are terminated during a trial period do not have even the circumscribed appeal rights set out in section 315.806. *See id.;* 5 C.F.R. § 1201.3.

*Reductions in force (RIFs).* Both Congress and the courts have recognized that, alongside the executive authority to remove probationary employees, agencies also have authority to abolish positions that the executive branch no longer deems necessary.

Mindful of our country's obligations to those who have served our nation in the military, Congress has instructed the executive branch to give due regard to veterans when relying upon its authority to abolish positions through a RIF. Thus, "[i]n 1876 … Congress passed a law which required any executive department when making 'any reduction of force' to 'retain those persons who may be equally qualified who have been honorably discharged from the military or naval service of the United States and the widows and orphans of deceased soldiers and sailors.'" *Hilton v. Sullivan*, 334 U.S. 323, 336 (1948) (quoting Act of August 15, 1876, 19 Stat. 143, 169). A subsequent 1912 statute provided for veterans' preferences "in the event of reductions being made in the force in any of the executive departments." Act of August 23, 1912, Public Law 299, ch. 350, § 4, 37 Stat. 360, 413.

Over time, these restrictions that apply when the executive branch relies upon its authority to abolish unnecessary positions came to encompass all employees, regardless of their veteran status. A 1944 law provided for retention preferences "[i]n any reduction in personnel in any civil service of any Federal agency." Veterans Preference Act of 1944, Public Law 78-359, ch. 287, 58 Stat. 387, 390. In 1944, the Civil Service Commission exercised the authority delegated by the Veterans' Preference Act of 1944 to enact regulations governing reductions in force. *See* 9 Fed. Reg. 9575 (Aug. 8, 1944); *see Hilton v. Forrestal*, 165 F.2d 251, 253 n.3 (D.C. Cir. 1947) (quoting 5 C.F.R. § 12.303 (1945 Supp.))).

The current version of the RIF statute dates to 1966, when Congress directed the Civil Service Commission to promulgate "reduction in force" regulations. Act of Sept. 6, 1966, Pub. L. No. 89-554, § 3502(a), 80 Stat. 378, 428. Congress directed that the regulations must "give due effect" to employees' "tenure of employment," "military preference," "length of service," and "efficiency or performance ratings." *Id.* The Commission promulgated "Reduction in Force" regulations two years later to conform with the statute. *See* 33 Fed. Reg. 12402, 12429-33 (Sept. 4, 1968). These regulations are currently codified at 5 C.F.R. part 351.

The RIF regulations recognize agency discretion in deciding whether to undertake a RIF. The regulations provide that covered agencies are "responsible for following and applying the regulations in this part when the agency determines that a reduction [in] force is necessary[.]" 5 C.F.R. § 351.204. Thus, part 351 governs only when an agency determines that it is necessary to rely upon its authority to conduct reductions in force. *See id.* The discretionary nature of RIFs is further emphasized in section 351.201(a)(1). The regulations explain that "[e]ach agency is responsible for determining the categories within which positions are required, where they are to be located, and when they are to be filled, abolished, or vacated." *Id.* "This includes determining when there is a surplus of employees at a particular location in a particular line of work." *Id.*

Section 351(a)(2) identifies which triggering events allow an agency to rely upon its authority to undertake RIFs. Among the triggering events that allow agencies to

invoke the RIF regulations are a "lack of work," the "shortage of funds," an "insufficient personnel ceiling," or a "reorganization." 5 C.F.R. § 351.201(a)(2). A "reorganization" is defined as the "planned elimination, addition, or redistribution of functions or duties in an organization." 5 C.F.R. § 351.203. Section 351(a)(2) further specifies that agencies relying upon the RIF regulations must follow the requirements of part 351. 5 C.F.R. § 351.201(a)(2). Where an agency decides to undertake a RIF, the regulatory requirements it must follow include retention preferences based on tenure of employment, veteran preference, length of service, and performance. *Id.* § 351.501(a); *see also id.* §§ 351.501-506.

*MSPB*. The Merit Systems Protection Board's jurisdiction is governed by statute and regulation. *See Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1327 (Fed. Cir. 2006) (*en banc*); 5 C.F.R. § 1201.3(a). Generally, "[t]he Board's appellate jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation." 5 C.F.R. § 1201.3(a). The board's governing regulation explains that, with respect to "[t]ermination of probationary employment," the "[a]ppealable issues are limited to a determination that the termination was motivated by partisan political reasons or marital status, and/or if the termination was based on a pre-appointment reason, whether the agency failed to take required procedures." 5 C.F.R. § 1201.3(a)(3); *see also* 5 C.F.R. §§ 315.805, 315.806.

The board's limited jurisdiction over probationary employee terminations is consistent with the statutory framework. Even before the CSRA was enacted, the

Supreme Court recognized that "[t]he procedural protections which the regulations accord to most dismissed probationary employees are limited." *Sampson v. Murray,* 415 U.S. 61, 64 (1974). The CSRA did not alter this rule. As this Court has explained, "[t]he language of the current statute establishes that Congress clearly intends review of the termination of probationary employees be more limited than that of other employees." *Bante v. MSPB*, 966 F.2d 647, 650 (Fed. Cir. 1992). Thus, the Court rejected a probationer's argument that some nexus must exist between the reason for his termination and his job duties. "Given the explicit and well established instructions from Congress, this court may not inquire into Bante's case beyond the scope of 5 C.F.R. § 315.806." *Id.*

Separately, at the time petitioner's appeals were adjudicated, the regulations also provided for board jurisdiction over a separation that "was effected because of a reduction in force." 5 C.F.R. § 1201.3(a)(6); *see also* 5 C.F.R. § 351.901.

## II. Factual Background and Prior Proceedings

*Factual Background.* On January 20, 2025, Charles Ezell, acting director of OPM, sent a memorandum to heads and acting heads of agencies and departments that provided guidance on (among other topics) probationary periods. Appx1349-51. In this memorandum, Mr. Ezell explained that probationary periods are "an essential tool for agencies to assess employee performance and manage staffing levels." Appx1349. He further wrote that such employees can be "terminated during that period without triggering appeal rights to the Merit Systems Protection Board

(MSPB)." He asked agencies to "identify all employees on probationary periods, who have served less than a year in a competitive service appointment, or who have served less than two years in an excepted service appointment, and send a report to OPM listing all such employees." *Id.* He further asked that agencies "promptly determine whether those employees should be retained at the agency." *Id.*

Consistent with OPM's guidance, both DHS and Interior prepared a list of its probationary employees and then went through a process for determining which of their probationary employees should be maintained as a result of serving in mission-critical occupations. Appx2353-60, Appx2395-96, Appx2429-30 (DHS); Appx2706-07, Appx2727-29 (Interior). On February 14, 2025, OPM issued guidance encouraging agencies to "separate probationary employees that you have not identified as mission-critical no later than the end of the day Monday, 2/17." Appx2724. OPM's guidance was predicated upon agencies' authority to manage probationary employees. *See id.* It explained that "an employee's performance must be measured in light of the existing needs and interests of government." *Id.*

Both DHS and Interior terminated certain of their probationary employees. The notices used by DHS and Interior differed, but each relied solely upon the agencies' authority to terminate probationary employees. DHS's notices had the subject line "Notification of Termination During Probationary Period," noted that the employee was in a probationary status, and quoted OPM's guidance regarding probationary employment. Appx285-960; Appx1140-59. DHS's notices either

informed employees that they were "not fit for continued employment because [their] ability, knowledge, and skills do not fit the Agency's current needs, and your performance had not been adequate to justify further employment at the Agency," Appx285-536, Appx871-960, Appx1140-59; or that the employee had not demonstrated that "further employment at the Agency would be in the public interest," Appx537-870. The notices indicated that the employee could appeal to the board under the authority of 5 C.F.R. § 315.806, the provision applicable to appeals brought by probationary employees. Appx285-960, Appx1140-59.

To similar effect, Interior's termination notices had the subject line "Notice of Decision To Terminate Excepted Service Appointment During Trial Period" or "Notice of Decision To Terminate Competitive Service Appointment During Probationary Period." Appx2060-71. The notices explained that the employee's appointment was subject to a trial period (in the case of excepted service appointees) or a probationary period (in the case of competitive service appointees). *Id.* The notices noted the standards applicable to probationary and trial periods. *Id.* The notices then indicated that the terminated employees had "failed to demonstrate fitness or qualification for continued employment" because their "subject matter knowledge, skills, and abilities do not meet the Department's current needs[.]" *Id.* In the case of excepted service appointees, the notice noted that the employee had no right to appeal to the board. Appx2070. In the case of competitive service appointees, the notice indicated that appeals were limited to non-frivolous allegations

that the terminations were motivated by partisan political reasons or marital status (that is, the grounds identified in section 305.806). Appx2063.

In effectuating the terminations, the agencies relied solely upon their authority to terminate probationary employees. Appx2440 (DHS); Appx2714 (Interior). The agencies did not rely upon their authority to undertake RIFs in undertaking the challenged removals. Appx2427 (DHS's response to request for admissions), Appx2440 (DHS's response to interrogatories); Appx2714, Appx2775 (Interior's responses to interrogatories). Although one DHS employee erroneously referred to the challenged action as a RIF, no RIF in fact took place in February 2025 at DHS. *See* Appx2400-02 (testimony from Ronald Edwards of DHS). Moreover, no positions were abolished through the termination of probationary employees. Appx2439 (DHS's response to interrogatories); Appx2775 (Interior's response to interrogatories). Mr. Edwards testified that, although billets[2] would go away for employees separated through the separate Deferred Resignation Program, they would remain for individuals separated as part of the probationary terminations at issue in this appeal. Appx2383.

Ultimately, approximately 313 probationary employees were terminated by DHS between January 20, 2025, and March 14, 2025, excluding those employees who

[2] "Billets" are a synonym for "positions." *Tippins v. United States*, 93 F.4th 1370, 1373 n.3 (Fed. Cir. 2024)

were terminated based upon an individualized action based upon their performance or conduct. Appx2407. DHS thus retained the vast majority of its 15,810 probationary employees. Appx2415. Similarly, Interior retained the majority of the approximately 4,094 probationary and trial period employees that it employed as of February 6, 2025. Appx2837; Appx2768. Between February 14 and February 18, 2025, Interior terminated approximately 1,877 probationary and trial employees. Appx2951.[3]

Separate from the guidance regarding probationary employment, President Trump issued an executive order requiring agencies to develop reorganization plans. Exec. Order 14210 (February 11, 2025), *available at* https://www.whitehouse.gov/presidential-actions/2025/02/implementing-the-presidents-department-of-government-efficiency-workforce-optimization-initiative/. But the probationary terminations that are at issue in this appeal, which began on February 14, 2025, did not arise out of Executive Order 14210. Rather, Executive Order 14210 led to a February 26, 2025, memorandum from Mr. Ezell and Russell Vought, director of the Office of Management and Budget, which set forth guidance regarding Agency RIF and Reorganization Plans and required that they be submitted

[3] A March 17, 2025, declaration contains slightly different information about the number of Interior terminations. *See* Appx2771 (showing that Interior terminated the competitive service appointments of 1301 individuals and terminated the excepted service appointments of 409 individuals, for a total of 1710 terminations).

to OMB and OPM by March 13, 2025. Appx2961-67. The guidance in that memorandum is not at issue in this appeal.

The removals were challenged in a Federal district court action. The U.S. District Court for the District of Maryland enjoined the terminations. *See Maryland v. U.S. Dep't of Agriculture*, 777 F. Supp. 3d 432 (D. Md. 2025). In compliance with the district court's order, both DHS and Interior offered reinstatement to the terminated probationary employees. Appx2407; Appx2771-72.[4] The district court's injunction was subsequently vacated on appeal. *Maryland v. U.S. Dep't of Agriculture*, 151 F.4th 197 (4th Cir. 2025).

*Procedural Background.* Probationary employees at DHS and DOI challenged their terminations in class action appeals to the MSPB. The administrative judge certified classes of DHS and Interior probationary employees who were terminated through the alleged RIFs. Appx5, Appx34. DHS and Interior challenged the board's jurisdiction. Appx2, Appx30. The parties then engaged in jurisdictional discovery, submitted evidence, and briefed the issue. Appx2, Appx30. Jurisdictional discovery included the agencies' production of documents and the petitioners' deposition of agency witnesses. The petitioners in the case brought by DHS probationary employees (unlike the petitioners in the Interior appeal) waived their right to a hearing. Appx15. Thus, in the appeal brought by the DHS probationary employees,

[4] Interior declined to reinstate two probationary employees who were not encompassed by the injunction. Appx2772.

the AJ considered whether petitioners demonstrated board jurisdiction by a preponderance of the evidence. Appx2-3; *see Garcia*, 437 F.3d at 1330. In the appeal brought by the Interior probationary employees, the AJ considered whether petitioners had made a non-frivolous allegation of board jurisdiction that entitles them to a hearing. Appx30-31.

In both cases, the administrative judge held that the MSPB lacked jurisdiction. The administrative judge reached these conclusions as a matter of law, holding that there were no material factual disputes. Appx15, Appx45-46.

In both decisions, the AJ recognized that "a Federal agency has considerable discretion to choose among available authorities for its actions." Appx38 (citing *Lovshin v. Dep't of the Navy*, 767 F.2d 826, 840-43 (1985) (*en banc*)); Appx12-13. The AJ found in both cases that the agencies acted pursuant to their authority to terminate probationary employees. Appx35; Appx12-13. The AJ explained that the board generally does not have jurisdiction over appeals brought by probationary employees, except to the extent authorized by 5 C.F.R. § 315.806. Appx39; Appx13. Thus, the AJ recognized the lack of authority for petitioners' view that the board could "either look behind the agency's proffered reasons for separating a probationary employee or limit the agency's authority to do so." Appx39; *see also* Appx13.

The AJ noted that petitioners contended that the agencies conducted a constructive RIF when it terminated them. Appx35-43; Appx6-15. The AJ rejected petitioners' "expansive reading of the [RIF] regulations." Appx41. The AJ

acknowledged petitioners' argument that the terminations were RIFs because they were taken for budgetary reasons rather than individual performance or conduct. Appx38-39. The AJ explained that, considering the board's jurisdictional limitations, it could not review the reasons for a probationary termination (except as authorized by section 315.806). Appx39; Appx13 & n.6. The AJ further noted that, for terminations to be reviewable as a RIF, positions must be abolished. Appx14; Appx35-36. But the agencies here "began with identifying untenured staff serving a probationary period, which is an individual characteristic of the employee's appointment." Appx41; Appx12. Moreover, the AJ stated that while the RIF regulations apply to the "planned elimination, addition, or distribution of functions or duties in an organization," 5 C.F.R. § 315.803, the agencies here had not engaged in any such plan of eliminating or redistributing functions. Appx14-15; Appx39-40.

In the DHS case, the AJ also addressed certain arguments made by petitioners in reliance upon jurisdictional discovery. Appx14-15. The AJ noted that, although the petitioners focused upon a comment to the effect that the "billet ultimately goes away," jurisdictional discovery had showed that "the comment was only related to employees who took the [Deferred Resignation Program], not the probationers." Appx14. In any event, the AJ recognized that, even if "the positions may eventually be repurposed or abolished, this would not support the appellant's argument." Appx14. This is because "[t]he RIF process is triggered when an agency needs to do

something with the employee that held an abolished position, not the other way around." Appx15 (citing *Tippins v. United States*, 93 F.4th 1370, 1375 (Fed. Cir. 2024)).

Finally, with respect to the Interior probationary employees, the AJ rejected their allegation of partisan political discrimination. Appx43-44. The AJ further rejected their allegation that OPM had violated the Administrative Procedure Act when it allegedly directed the terminations. Appx44-45. (No similar arguments were raised by the DHS probationary employees.).

## SUMMARY OF THE ARGUMENT

The board correctly concluded that it lacked jurisdiction to entertain the challenges of the petitioners, all of whom are probationary employees, to their terminations.

As the notices issued by DHS and Interior demonstrate, the agencies relied solely upon their authority to terminate probationary and trial employees based upon a determination that they had "failed to demonstrate [their] fitness or [their] qualifications for continued employment[.]" 5 C.F.R. § 315.804(a). And competitive service employees who are terminated under section 315.804 may appeal only by arguing that their termination was based upon "partisan political reasons or marital status[,]" *see* 5 C.F.R. § 315.806(b), while excepted service employees terminated during their trial periods do not have any appeal rights before the board, *see Holland*, 796 Fed. App'x at 1024. Because neither of the circumstances identified in section

315.806(b) are present here, the board correctly concluded that it lacked jurisdiction over petitioners' claims.

Petitioners contend that the board possesses jurisdiction because the agencies conducted RIFs. But this disregards the rule, evident in this Court's precedent and consistent with bedrock principles of administrative law, that agencies have flexibility in the authority upon which they choose to rely. DHS and Interior cannot be judged by the standards of authorities that they decline to invoke. The governing regulations, which emphasize that the RIF provisions apply only when an agency "determines that a reduction [in] force is necessary[,]" 5 C.F.R. § 351.204, demonstrate that agencies ultimately have discretion as to whether to conduct a RIF. Rather than relying upon their authority to conduct RIFs here, DHS and Interior opted to rely upon their separate authority to terminate probationary employment. None of the cases cited by petitioners support their argument that the board can disregard a valid source of authority relied upon by agencies and apply regulations governing a separate source of authority.

And, even setting aside the agencies' reliance on its authority to terminate probationary employees, the challenged terminations here do not constitute RIFs. Under this Court's precedent, a RIF requires that an agency abolish a position. Here, by contrast, the agencies did no such thing. Rather, they focused solely on attributes of the terminated probationary employees—their status as probationary employees. Petitioners fail to contend with the agencies' evidentiary submissions, during

jurisdictional discovery, which show that no positions were eliminated through the probationary terminations. In addition, even as petitioners maintain that the agencies here conducted a reorganization, they are unable to point to any evidence of formal position abolition. Their argument boils down to the one that this Court has recently rejected in *Tippins,* 93 F.4th at 1375: that because there was a reduction in the number of personnel employed by the agencies, there was a reduction in force under the governing regulations. This is not the law.

Finally, petitioners raise a separation-of-powers claim that was not presented to the board. This argument has been forfeited, and in any event lacks merit. As the Supreme Court has recognized, a garden-variety assertion that an agency exceeded its authority does not state a viable separation-of-powers claim. And even if it did, Congress has conferred upon the executive branch extremely broad authority to manage probationary employees. This is evidenced by, among other enactments, Congress's decision to exempt probationary employees from the protections afforded to tenured employees.

The board's dismissal should be affirmed.

## ARGUMENT

### I. Standard of Review

The Court must affirm an MSPB decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3)

unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)-(3). This Court reviews the board's jurisdictional determinations de novo. *Butler v. Social Sec. Admin.*, 331 F.3d 1368, 1371-72 (Fed. Cir. 2003).

## II. The Board Correctly Concluded That It Lacked Jurisdiction Over Petitioners' Claims

Because petitioners have not established board jurisdiction over their appeals, the Court should affirm the board's dismissal.[5]

### A. Because DHS and Interior Exercised Their Broad Authority To Terminate Probationary Employees, The Terminations Are Unreviewable By The Board

DHS and Interior both acted pursuant to their authority to separate probationary employees before they became tenured employees. The board lacks jurisdiction to entertain challenges to such terminations.

---

[5] Generally, petitioners have the burden of establishing board jurisdiction. 5 C.F.R. § 1201.56(b)(2). To obtain a jurisdictional hearing, a petitioner must make a non-frivolous allegation of board jurisdiction. *See Garcia*, 437 F.3d at 1330. If she does so, she must demonstrate board jurisdiction by a preponderance of the evidence at a hearing. *See id.* Because petitioners in the case brought by DHS waived their right to a hearing, Appx15, Pet. Br. 23-24 n.3, the question in the appeal brought by the DHS probationary employees is whether they have demonstrated board jurisdiction by a preponderance of the evidence. *See Garcia*, 437 F.3d at 1330. The question in the appeal brought by the Interior probationary employees is whether they have made a non-frivolous allegation of board jurisdiction that entitles them to a hearing. *See id.* As we explain below, under either standard, the board correctly concluded that petitioners have not established board jurisdiction.

### 1. DHS And Interior Relied Upon Their Authority To Terminate Probationary And Trial Employees

The notices provided to the petitioners could not be clearer: DHS and Interior were relying solely upon authorities applicable to probationary employees when they terminated petitioners. The notices note that the employment is subject to a probationary (or, in the case of excepted service employees, a trial) period. Appx285-960; Appx1140-59; Appx2060-71. The notices further explain that, during the probationary period, the probationary employee has the burden of demonstrating his fitness for a permanent appointment. *See id.* And the notices clearly convey that the agency's decision to separate the probationers from employment is predicated upon an exercise of its authority to terminate probationary employees. *See id.* By contrast, the notices do not refer at all to the authorities regarding RIFs. There is simply no evidence in the notices provided to employees suggesting that the agencies were doing anything other than exercising their responsibility to terminate probationary employees who were deemed not fit for permanent employment. And petitioners themselves do not suggest a different reading of the notices. *Compare Baxter v. United States*, 136 F. Supp. 748, 749-50 (Ct. Cl. 1954) (concluding that an agency relied upon

its authority to conduct reductions in force when the separation notice provided to an employee had the subject line "Notice of Reduction in Force").[6]

The notices are not the only evidence that the agency was not relying upon its authority to conduct RIFs. The agencies' responses in discovery before the board both indicated that they were relying solely upon their authority to terminate probationary employees. Appx2440 (DHS); Appx2714 (Interior). And the issuance of the notices followed a process that focused solely upon probationary employees. Appx1349-51; Appx2353-60, Appx2395-96, Appx2429-30; Appx2706-07, Appx2727-29. Had the agencies intended to rely upon their RIF authority, there would be some indication of an attempt to follow the RIF procedures. But there is nothing in the record evidencing such an attempt. The complete absence of such evidence does not, as petitioners suggest, Pet. Br. 40-41, support the view that the agencies were improperly carrying out a RIF. Rather, it provides further support for what is obvious from the notices provided to employees: that the agencies were relying upon an

[6] Petitioners' brief cites the Court of Claims' decision in *Baxter*, but petitioners provide an incomplete description of the case's facts. *See* Pet. Br. 26. Petitioners say that *Baxter* held that there was a "reduction in force" in that case "even though [that] term was not used" because it was "clear from the evidence that action was taken 'to reduce the total number of personnel.'" *See id.* But the employee in *Baxter* received three separate notices: two furlough notices and a separation notice. 136 F. Supp. at 750. And the separation notice contained the subject line "Notice of Reduction in Force" and informed the employee that he would be "involuntarily separated from the service due to a necessary reduction in force." *Id.* at 749. That the separation notice in *Baxter* twice used the phrase "reduction in force" is an important distinction from this appeal, where the notices relied only upon the agencies' authority to separate probationary employees.

entirely separate source of authority. Ultimately, when the record is viewed in its entirety, it does not support any plausible inference that the agency conducted an illegal RIF, as opposed to relying upon its authority to terminate probationary employees. *See Holland*, 796 Fed. App'x at 1024 (relying in part upon legal authority identified by agency in termination letter to conclude that board lacked jurisdiction).

In examining the record, the board applied a fundamental principle governing administrative and judicial review of agency personnel actions: "[A] Federal agency has considerable discretion to choose among available authorities for its actions." Appx38 (citing *Lovshin*, 767 F.2d at 840-43). Thus, this Court has held that an employee who is removed under chapter 75 cannot viably argue at the board that the removal was a constructive chapter 43 removal because the real reason motivating the removal was the agency's performance concerns. *See Lovshin*, 767 F.2d at 843. Instead, the board would properly examine the procedure elected by the agency (in that case, the procedures set out in chapter 75) and determine whether all requirements for a chapter 75 removal were satisfied. *See id.* The same reasoning applies here.

The board also recognized that it "must assess an agency action under the procedures elected by the agency and may not hold the agency to compliance with a legal authority the agency did not invoke." Appx38 (citing *King v. Jerome*, 42 F.3d 1371, 1374 (Fed. Cir. 1994); 73 FR 20149-01, 2008 WL 1711239, 20152-3 (Apr. 15, 2008)). The board's reasoning is consistent with the "simple but fundamental rule of

administrative law . . . to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see also Michigan* v. *EPA*, 576 U.S. 743, 758 (2015) (explaining that it is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action."). This Court has applied these principles when considering a petitioner's request to depose a cabinet head to determine whether the agency's stated reasons for conducting a RIF were its true reasons. "Contrary to petitioners' view," the Court explained, "the MSPB and this court are not empowered, under the circumstances here, to look behind the stated basis for the RIF." *Bacon v. HUD*, 757 F.2d 265, 269 (Fed. Cir. 1985); *see also id.* at 270 ("The reasons were formally stated and the function of review here is to determine whether the record supports the stated reasons or not.").

Accordingly, the board correctly concluded that DHS and Interior relied upon their authority to terminate probationary employees in effectuating the challenged terminations.

2. Because The Challenged Terminations Were Predicated Upon Agency Authority To Terminate Probationary Employees, The Board Correctly Held That It Lacked Jurisdiction

The board's jurisdictional analysis is straightforward. Where an agency relies upon its authority under sections 315.803 and 315.804 to terminate probationary

employees, the governing regulations identify only two bases for appeal. Because it is undisputed that neither ground is implicated here, the board correctly held that it did not possess jurisdiction to hear petitioners' appeals.

The board has very limited jurisdiction to review the termination of probationary employees separated pursuant to agencies' exercise of authority. Section 315.806(a) provides that appeals of probationary terminations are limited to the grounds set forth in section 315.806(b) and (c). This regulatory language is reinforced by the board's jurisdictional grant, which imposes the same limitation over the board's review of termination of probationary employment. 5 C.F.R. § 1201.3(a)(3). Under section 315.806(b), "[a]n employee may appeal under [section 315.806] a termination not required by statute which he or she alleges was based on partisan political reasons or marital status." *Id.* Petitioners do not allege either of those grounds for appeal here.[7] The only alternative ground for appeal, which allows probationary employees to challenge the procedures used for a termination that arose for "reasons based in whole or in part on conditions arising before his appointment," also is not raised by petitioners here. 5 C.F.R. § 315.806(c). Thus, petitioners do not contend that they are authorized by section 315.806 or section 1201.3(a)(3) to appeal the termination of their probationary employment. And, although the board has jurisdiction to review

[7] In the Interior appeal, petitioners argued before the board that they were the victims of partisan political discrimination. Appx43-44. They do not pursue this argument on appeal.

actions brought by employees affected by a RIF, the agencies here did not rely upon that source of authority, as explained above.

As a result, the board correctly concluded that it lacked jurisdiction over petitioners' challenges. As this Court has explained when rejecting an appeal from a probationary employee who insisted that his performance was misjudged by the agency, "the agency need not show unsatisfactory performance in order to discontinue employment during a probationary period; the only grounds for appeal are those set in 5 C.F.R. § 315.806(b)-(c) and § 1201.3(a)(8)[8]." *Yu v. Dep't of Army,* 28 Fed. App'x 968, 970 (Fed. Cir. 2002) (unpublished); *see also Mays v. MSPB*, 301 Fed. App'x 988, 991 (Fed. Cir. 2008) (unpublished) (affirming dismissal where probationer "only addressed the merits of his demotion, before both the Board and this court on appeal," and provided no "evidence that his demotion was based on marital status or political affiliation."). The Court has recognized that, where petitioners fail to "address the issue of the board's jurisdiction over an appeal by a probationary employee, we cannot review any claim relating to alleged procedural irregularities, constitutional infirmities, or the merits of petitioner's removal." *Mastriano v. F.A.A.*, 714 F.2d 1152, 1156 (Fed. Cir. 1983). Thus, even if petitioners had identified a failure by the agencies to comply with the regulations governing probationary terminations, it

[8] When *Yu* was decided, the regulatory limitation over the board's jurisdiction over probationary terminations was contained in section 1201.3(a)(8). For the period relevant to petitioners' appeal, it was contained in section 1201.3(a)(3).

does not follow that they have a remedy at the board. *See Nat'l Treasury Employees Union v. FLRA*, 737 F.3d 273, 276 (4th Cir. 2013) (recognizing that, although probationary employees are "just as entitled to be free of illegal or discriminatory treatment from their employers as are non-probationary employees . . . [t]his does not mean, however, that Congress intended for the same *remedies* to be available to probationary and non-probationary employees.").

Petitioners emphasize the fact that the RIF regulations account for probationary employees. Pet. Br. 7-8, 48-49; 5 C.F.R. § 351.501(b)(2); *see Bielomaz v. Dep't of Navy*, 86 M.S.P.R. 276, 280 (2000); *Lowmack v. Dep't of Navy*, 80 M.S.P.R. 491, 497-98 (1999). Petitioners infer from this that the board must necessarily have jurisdiction over probationary employees' challenges to these alleged RIFs. *See id.* But the scope of the board's jurisdiction depends upon the source of authority relied upon by the agency. When, as here, agencies rely upon their authority to remove probationary employees pursuant to sections 315.803 and 315.804, the governing jurisdictional provision is section 315.806. *See Mastriano*, 714 F.2d at 1156. And because petitioners indisputably do not fall within the categories set forth in section 315.806, the board cannot entertain this appeal. *See id.* The cases relied upon by petitioners did not consider situations where an agency exercised its authority to remove probationary employees, so they had no reason to consider the jurisdictional limitations that apply when agencies rely upon their authority to terminate probationary employees on "fitness" grounds under section 315.804. *See Bielomaz*, 86

M.S.P.R. at 277 (explaining that "the agency provided the appellant with a 'Notice of Reduction in Force (RIF) and Separation' which informed the appellant that he had been affected by a reduction-in-force (RIF) action"); *Lowmack*, 80 M.S.P.R. at 497-98 (noting lack of evidence as to whether petitioner was even a probationary employee in explaining why petitioner was entitled to a jurisdictional hearing). Because, as we explain further below, the agencies here did not rely upon their authority to conduct RIFs but instead relied upon their authority to terminate probationary employees, the fact that RIF regulations apply to probationary employees is of no moment.

Historical evidence supports the board's view of agency discretion in the termination of probationary employment. The executive branch's authority to determine the fitness of employees during a probationary period was codified in the Pendleton Act. Applying these civil service rules, courts have long recognized agencies' sweeping authority to terminate a probationary employee "when his services are not needed." *Ruggles v. United States*, 45 Ct. Cl. 86, 88 (1910); *see also Brown v. United States*, 39 Ct. Cl. 255, 257 (1904). And even as Congress imposed limitations on the removal of tenured employees, the Civil Service Commission explained that these protections did not apply to probationers, who needed only be told the reason for their separation. *See* U.S. Civ. Serv. Comm'n, Twenty-Ninth Annual Report 112 (1913); 5 C.F.R. § 12.101(b) (1938). Far from being focused upon extending additional protections to probationers, the Civil Service Commission expressed concern that agencies were not making sufficient use of their power to terminate

employees who were not fit for a permanent appointment. *See* U.S. Civ. Serv. Comm'n, Thirty-Ninth Annual Report xxi (1922); U.S. Civ. Serv. Comm'n, Forty-Sixth Annual Report 35 (1929).

The board's decision is consistent with a long line of cases from this Court, see *Bante*, 966 F.2d at 650, and with historical practice, see *Sampson,* 415 U.S. at 64; *see also Nadelhaft v. United States*, 132 Ct. Cl. 316, 320 (1955) ("Thus, the only thing necessary to do to remove a probationary appointee is merely to tell him why you are removing him.").[9] Because the agencies here relied upon their authority to terminate probationary employees, and the circumstances authorizing board appeals by terminated probationers do not exist here, the board correctly held that it lacks jurisdiction over petitioners' appeals.

[9] Petitioners cite *McGuffin v. Social Security Administration*, 942 F.3d 1099, 1102 (Fed. Cir. 2019), for the proposition that the employer "must honestly be dissatisfied with the probationer's conduct or performance after giving him a fair trial on the job." Pet. Br. 51-52 (cleaned up). This proposition arises out of cases that did not consider the scope of an agency's authority to account for budgetary considerations when considering the fitness of an employee. In any event, *McGuffin* considered a claim under the Uniformed Services Employment and Reemployment Rights Act, which provides specific rights to veterans that are not at issue in this appeal. *McGuffin* did not consider the limits on the board's jurisdiction imposed by 5 C.F.R. § 315.806 and § 1201.3(a)(3), neither of which it cites. Neither *McGuffin* nor any of the cases upon which it relies suggests that there is an exception to 5 C.F.R. § 315.806(b)-(c) and § 1201.3(a)(3) allowing the board to review a petitioner's assertion that an agency was not "honestly dissatisfied" with petitioner's performance.

### 3. Petitioners Cannot Evade The Board's Jurisdictional Limitations By Attacking The Agencies' Fitness Determinations

Petitioners attempt to establish board jurisdiction over their terminations by challenging whether the agencies properly exercised their authority to terminate probationary employees. The board properly rejected this challenge as beyond the scope of its jurisdiction and, in any event, petitioners' argument misunderstands the scope of agencies' authority over probationers.

Petitioners contend that the termination notices relied upon an unduly broad interpretation of "fitness" and "qualification" by (a) failing to undertake an individualized assessment of employees' performance; and (b) accounting for the budgetary consequences of continued employment. Pet. Br. 50-52. This amounts to an argument that the agencies improperly exercised their authority to terminate probationary employees. But, as we explained above, these are merits arguments over which the board lacks jurisdiction. *Mastriano,* 714 F.2d at 1156; *Yu,* 28 Fed. App'x at 970. The limits on the board's jurisdiction are dispositive and the Court need go no further to affirm the board's decision.[10]

Even if the propriety of the agency's actions here were within the scope of the board's jurisdiction, petitioners' argument is based upon an unduly narrow view of

---

[10] Petitioners rely heavily upon an injunction entered by a district court in a case brought by probationary employees. *E.g.*, Pet. Br. 45; *Maryland v. U.S. Dep't of Agriculture*, 770 F. Supp. 3d 432 (D. Md. 2025). The injunction entered by the district court has been vacated because the district court lacked jurisdiction under Article III to enter it. 151 F.4th 197 (4th Cir. 2025). Moreover, the district court's order was a

agencies' authority to terminate probationary employees. An agency's authority to "terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment," 5 C.F.R. § 315.804, encompasses an analysis of whether the individual's abilities warrant continued employment in light of shifting agency priorities. Appx12-13; Appx39. "Qualification" is defined as "any quality, accomplishment, or ability *that suits a person to a specific position or task*." *The American Heritage Dictionary of the English Language, New College Edition* 1067 (1976) (emphasis added). Accordingly, an agency should consider probationary employees' qualifications by reference to the agencies' needs. Consistent with this reading, courts have long recognized that an agency can terminate probationary employment relationships when it decides that it no longer needs the employee's services. *See Ruggles*, 45 Ct. Cl. at 88. DHS and Interior permissibly considered whether the terminated employees were required for the agency's work when it made the decision to terminate them. *See* Appx2399 (explaining that decisions challenged here were based on whether the probationary employees were "needed"); Appx2724 (February 14, 2025, memorandum from OPM noting that "an employee's performance must be measured in light of the existing needs and interests of government.").

---

preliminary order entered on an incomplete record. Even setting aside all the other issues with this order, the district court had no reason to consider the regulatory limits on the board's review of probationary terminations that are at the heart of this case, given that the limits on the board's jurisdiction did not apply to the district court.

This conception of agencies' regulatory responsibilities with respect to probationary employees is consistent with the statute's grant of authority. Congress has authorized the President to "take such action" as "shall provide as nearly as conditions of good administration warrant for a period of probation . . . ." 5 U.S.C. § 3321. The phrase "conditions of good administration" authorizes the President and his officers to account for budgetary considerations. The D.C. Circuit construed an analogous grant of authority in *National Treasury Employee Union v. Horner*, 854 F.2d 490, 494 (D.C. Cir. 1988), which considered OPM's authority under 5 U.S.C. § 3302(1) to except positions from the competitive service when "conditions of good administration warrant." *Id.* The D.C. Circuit held that the "conditions of good administration" grant of authority allowed OPM to "take cost into account" when deciding which positions to except. *Id.* at 499. Similarly, the "conditions of good administration" language contained in section 3321 undermines petitioners' cramped view of agencies' power to terminate probationary employees.

Especially when considering the statutory authority pursuant to which they were enacted, these regulations provide independent authority, separate from the RIF regulations, for agencies to terminate competitive-service probationary employees if the agency decides that conferring a permanent appointment upon them is unwarranted given the agency's current priorities.

### B. The RIF Regulations Neither Apply When Agencies Rely Upon Their Authority To Terminate Probationary Employees Nor Authorize Board Jurisdiction Over Exercises Of Agency Authority To Terminate Probationary Employees

The board correctly concluded that DHS and Interior did not conduct a reduction in force here.

#### 1. Agencies Are Not Required To Follow RIF Regulations When They Rely Upon A Separate Authority To Terminate Employees

The reduction in force regulations apply only when agencies rely upon their authority to undertake a reduction in force. As explained above, the agencies did not do so here. Consequently, the RIF regulations do not apply.

The plain language of the governing regulations demonstrates this. Under the heading "Agency Responsibility," the RIF regulations explain as follows: "Each agency covered by this part is responsible for following and applying the regulations in this part *when the agency determines that a reduction [in] force is necessary*." 5 C.F.R. § 351.204 (emphasis added). Petitioners' brief is based upon the premise that agencies must always follow the reduction-in-force regulations, irrespective of the authority they rely upon. But section 351.204—which petitioners fail to mention—shows that the application of the RIF regulations is contingent on a determination by the agency that "a reduction [in] force is necessary." *See id.; see also Cross v. Dep't of Transp.,* 127 F.3d 1443, 1447 (Fed. Cir. 1997) ("Generally, determining when a RIF is appropriate is a matter of an agency's independent managerial discretion."); *Grier v. Dep't of Health*

*and Human Services*, 750 F.2d 944, 945-46 (Fed. Cir. 1984) (explaining that OPM regulations governing the identification of employees affected by a RIF are triggered only "[a]fter the agency had decided to eliminate positions as a matter of its independent managerial discretion[.]"); *Gandola v. F.T.C.*, 773 F.2d 308, 311 (Fed. Cir. 1985) (a "decision on the composition and structure of the work force reflects the kind of managerial judgment that is the essence of agency discretion, and is not meet for judicial reevaluation."). As the record makes abundantly clear, the agencies here made no such determination. *See, e.g.*, Appx2400 (no RIF undertaken by DHS in February 2025); Appx2714, Appx2775 (no RIF undertaken by Interior in February 2025). Rather, the agencies opted for a different source of authority: their authority to terminate probationary employees. Appx285-960, Appx1140-59; Appx2060-71. The board thus lacks jurisdiction.

In addition to being undermined by the language of section 351.204, petitioners' reading is contrary to overarching principles of Federal personnel law. As we explained above, it clashes with the principle, recognized by this Court in *Lovshin* and *King*, that agencies retain discretion in choosing among available authorities and their actions cannot be evaluated through the lens of procedures that the agency forswore. Appx12-13; Appx38. Contrary to petitioners' suggestion, *e.g.*, Pet. Br. 46, the agencies' actions did not amount to evading the RIF rules. Rather, the agencies decided not to rely upon the authority to conduct RIFs and had no reason to evade rules that did not apply. *See Mueller v. U.S. Postal Service*, 76 F.3d 1198, 1201 (Fed. Cir.

1996) ("An agency has no obligation, under the RIF regulations or otherwise, to give an employee notice of the right to appeal a RIF action to the Board if a RIF action has not been taken against that employee."). Petitioners are wrong when they contend that DHS and Interior were required to rely upon RIF authorities instead of their authority to terminate probationary employees. *See Manescalchi v. U.S. Postal Service*, 74 M.S.P.R. 479, 484 (1997) (explaining that the "Board cannot demand that an agency run a RIF, only that it run one properly, should it choose to run one at all.").

The historical practice of the Government further buttresses our position. As the AJ pointed out here, personnel manuals separated by almost three decades have identified removing employees without appeal rights as a RIF avoidance measure. Appx13-14 (citing Federal Personnel Manual, chapter 351, at § 1-3 (1988) (identifying the separation of temporary employees as a RIF avoidance measure)); U.S. Office of Pers. Mgmt, Workforce Reshaping Handbook, chapter 1, p. 9 (Mar. 2017) (same)). Petitioners' argument is undermined by this historical evidence showing that the separation of untenured employees is not necessarily a RIF but can instead be a tool used to avoid the need for RIFs. *See N.L.R.B. v. Noel Canning*, 573 U.S. 513, 525 (2014) (explaining that "the longstanding practice of the government can inform our determination of what the law is" (cleaned up)).

Relatedly, petitioners' reading also would require the Court to conclude, without any historical evidence, that the RIF rules displaced agencies' broad authority

to terminate probationary employees. As noted above, agencies' broad authority over whether to terminate probationary employment is well established by historical practice. Thus, when Congress enacted a generally applicable RIF statute in 1944, and when OPM implemented the statute by regulation in 1945, agencies' broad authority to terminate probationary employees whose continued employment was considered unnecessary was already established as a background principle of law. There is no indication that either Congress or OPM was seeking to displace these established principles through the 1944 statute or the subsequent regulations. *See Morgan v. Principi*, 327 F.3d 1357, 1361 (Fed. Cir. 2003) (applying the presumption that Congress "legislate[s] against the backdrop of existing law."); *see also Lovshin*, 767 F.2d at 842 ("The normal assumption, where Congress amends one part of a law leaving another part unchanged, is that 'the two were designed to function as parts of an integrated whole' and each should be given 'as full a play as possible.'" (quoting *Markham v. Cabell,* 326 U.S. 404, 411 (1945)). And, indeed, even after the enactment of the 1944 statute and the 1945 regulations, the Court of Claims continued to recognize that "it seems to us that both in reason and according to the law and regulations a probationary appointee may be removed at any time until he has demonstrated his fitness to hold the position[.]" *Nadelhaft*, 132 Ct. Cl. at 321.

### 2. The Cases Relied Upon By Petitioners Do Not Support The Exercise Of Board Jurisdiction Here

Relying upon a series of cases from this Court and the board, petitioners argue that the board must look to substance rather than form when evaluating whether a RIF was conducted. But the cases they cite do not establish board jurisdiction here.

In support of their view, petitioners rely upon assertions to the effect that an agency's characterization of its personnel action is not controlling. *E.g.*, Pet. Br. 21 (citing *Baker v. Dep't of Homeland Sec.*, 99 M.S.P.R. 92, 95 (2005)). But to the extent petitioners argue that agency action should be evaluated based upon authorities that they did not elect, petitioners are asking this Court to depart from the principles set forth in *Lovshin* and *King*. *See* Appx12-13; Appx38. The Court should decline petitioners' invitation.

The cases relied upon by petitioners fall into three categories, none of which support their view that the board has jurisdiction here.

One category of cases relied upon by petitioners address whether an agency that invoked its authority to conduct a RIF was authorized by the governing regulations to conduct the challenged RIF. *See Baker*, 99 M.S.P.R. at 96 (holding that agency could not rely upon authority to conduct RIFs when challenged "action was a removal for reasons personal to the appellant"); *Blalock v. Dep't of Agriculture*, 28 M.S.P.R. 17, 21 (1985) (holding that the agency had not undertaken a RIF because there had been no "reorganization"); *see also Holmes v. Dep't of Army*, 41 M.S.P.R. 612,

615 (1989) (looking to evidence in record to determine whether a reorganization occurred). These cases establish that, when an appeal falls within its jurisdiction, the board's authority extends to deciding whether an agency possesses the authority upon which it relies. *See id.* But that principle does not help petitioners. As we explained above, the agencies here relied upon their authority to terminate probationary employees. And there is no doubt that the petitioners here (a) were probationary or trial employees and (b) did not fall within either of the categories within which board appeals are permitted. *See* Appx5, Appx34 (defining classes to include only probationary and trial employees); Appx13 n.6. Under these circumstances, the board could conclude only that the agencies had relied upon their authority to terminate probationary employees, and that it did not have the power to review this exercise of authority.

Petitioners also focus on a category of cases in which an agency eliminated positions or took another personnel action without a valid source of authority. *See James v. Von Zemenszky*, 284 F.3d 1310, 1317 (Fed. Cir. 2002) (concluding that the phrase "conditions of employment," as used in 38 U.S.C. § 7421, did not authorize VA to prescribe an alternative to OPM's RIF procedure); *Robinson v. U.S. Postal Service*, 63 M.S.P.R. 307, 318 (1994); *Carter v. Small Business Admin.*, 23 M.S.P.R. 309, 311 (1984) (rejecting agency's argument that it was not required to apply RIF procedures because the "downgradings [of appellants] merely represented the correction of classification errors"). In these cases, the agency must follow RIF procedures because

they can effectuate the challenged personnel action only by relying upon RIF authority. But that is because the agency did not identify some other valid source of authority, apart from the RIF regulations, that authorized the challenged personnel actions. Here, by contrast, the agencies did identify a source of authority that permitted the challenged terminations: their authority to separate probationary employees. Those cases thus do not address the legal issues presented here.

Finally, petitioners cite cases in which this Court or the board upheld an agency's reliance on its RIF authority. *See Bacon*, 757 F.2d at 269 (agreeing that agency had properly invoked RIF authority when it conducted a reorganization by "eliminating positions in certain central offices" to address overstaffing); *Gandola*, 773 F.2d at 310 (affirming the board's conclusion that "the agency had in fact invoked the RIF regulations for one of the management reasons specified in 5 C.F.R. § 351.201(a)"); *Wright v. F.A.A.*, 12 M.S.P.R. 545, 546-47 (1982) (holding that employee was subjected to RIF where the agency conceded that employee had been subjected to a RIF). But those are cases where agencies (a) determined that it was necessary to rely upon their RIF authority, *see* 5 C.F.R. § 351.204; (b) did not justify the challenged personnel action through another source of authority; and (c) acknowledged that they were abolishing positions for one of the reasons identified in section 351.201(a)(2). Here, by contrast, DHS and Interior did not rely upon their authority to conduct RIFs; they instead exercised their discretion to rely upon a separate source of

authority; and did not abolish any positions or act for any of the reasons that would authorize a RIF under section 351.201(a)(2).

Ultimately, petitioners are seeking to import principles from areas where the board has jurisdiction into one where it does not. The Court should reject this line of argument.

### 3. Petitioners' Policy Concerns Are Misplaced

Finally, petitioners express concern that our position would allow agencies bent on saving money to target probationary employees and "would render the RIF requirements self-defeating." Pet. Br. 38. Petitioners' concerns are misplaced.

As petitioners acknowledge, Federal employment law recognizes that agencies must use the probationary period to decide which employees to retain. Pet. Br. 6. Probationary employees do not yet have tenure and thus the selection process for them had not yet been concluded. *Id.* It is entirely reasonable for an agency that realizes it needs to save money to first target those for whom the selection process has not concluded (just as it might, for example, by instituting a hiring freeze that results in position openings being canceled before any hires are made). An approach that looks first to whether the agency has hired probationary employees for which it does not have a need is consistent with the policies governing probationary employees and RIFs. Appx13-14 (recognizing that a focus upon untenured employees is a valid RIF avoidance mechanism).

Petitioners overstate the consequences of the agencies' decision to rely on their authority to terminate probationary employees rather than the RIF regulations. The RIF regulations still apply whenever agencies decide, as a matter of their managerial discretion, that it is necessary to undertake a reduction in force. *See* 5 C.F.R. § 351.204. The principles we are asking the Court to recognize would apply only where an agency chooses to rely upon some other valid source of authority, such as its authority to terminate probationary employees, that authorized the personnel actions necessary to achieve the agency's ends. And for all petitioners' emphasis on the employee-protective-nature of the RIF regulations, probationary employees are terminated before non-probationary career employees when an agency conducts a RIF. *See* 5 C.F.R. § 351.501(b).

Petitioners incomplete analysis of the governing policy considerations provides no reason to recognize this unprecedented theory of board jurisdiction.

### C. Even Assuming That The RIF Regulations Apply When An Agency Relies Upon A Separate Source Of Authority, The Agencies Did Not Eliminate Jobs Or Undertake A Reorganization

As explained above, the agency's reliance on its authority to terminate probationary employees means that the regulations governing RIFs are inapposite. But even if the Court concludes that the RIF regulations apply when agencies exercise their power to terminate probationary employees, they are not implicated here. This

is so for two independent reasons: first, no positions were abolished; and second, the causes identified in section 351.201(a)(2) which give rise to a RIF are not present here.

### 1. The RIF Regulations Are Not Applicable Here Because No Positions Were Abolished And The Agency Did Not Act For Any Of The Reasons Identified In Section 351.201

As this Court has explained, "we have consistently defined a reduction in force as an administrative procedure by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions." *Tippins*, 93 F.4th at 1375 (cleaned up). A reduction in force "is not an adverse action against a particular employee, but is directed solely at a position within an agency." *Id.* (cleaned up). A reduction in force "does not include actions to separate current occupants from their positions simply to make room for others." *Id.* at 1374-75.

*Tippins* is dispositive here, as the petitioners have failed to demonstrate that the agency eliminated any positions. As we explained above, rather than targeting positions, the separations targeted personnel based upon their status as probationary employees. It is undisputed that the process for identifying personnel to be terminated began with the creation of a list of probationary employees. Appx1349-51; Appx2360; Appx2706-07. This is markedly different from the process agencies follow for RIFs, in which the agency first "determines which positions to abolish[,]" and then "selects the people to be eliminated serving in those positions on the basis of their retention standing." *Gandola*, 773 F.2d at 310. The record further confirms

that the terminations of probationary employees did not result in the elimination of positions. As explained by DHS's Ronald Edwards, probationary employees' "billet will remain if they were removed under probationary terminations." Appx1362. Consistent with Mr. Edwards's testimony, after litigation commenced, petitioners were returned to their positions. Appx2408; Appx2771.

In addition to not abolishing any positions, the terminations here did not meet any of the criteria set forth in section 351.201. The only trigger identified in the body of petitioners' brief is "reorganization." Pet. Br. 32.[11] Petitioners assume that any time an agency terminates personnel because it is overstaffed, it is engaging in a reorganization. *See id.* But this is not what section 351.203, the regulation that defines "reorganization," says.[12] And petitioners have not demonstrated that

---

[11] Petitioners also identify, in a footnote, "lack of work" as another basis for invoking the RIF authority. Pet. Br. 32 n.4. But they do not develop this argument and have thus waived it. *Ford Motor Co. v. United States*, 926 F.3d 741, 760 n.12 (Fed. Cir. 2019). In any event, there is no support for the view that the probationary employees were terminated because they lacked work. Petitioners assert that the agency focused upon statutorily required functions when deciding which probationary employees to retain. Pet. Br. 32 n.4. But that certain probationary employees may have performed work that was not statutorily required does not mean that they lacked work. Many employees perform work that is statutorily authorized but not required.

[12] Petitioners suggest that any action taken to address "overstaffing" constitutes a "reorganization" based upon this Court's decision in *Bacon*, 757 F.2d at 269. Pet. Br. 32. But *Bacon* does not support this proposition. Rather, it shows that, if an agency decides it is necessary to undertake a RIF, and "seeks to remedy [overstaffing] in its headquarters *by eliminating positions in certain central offices*," such action "clearly falls within the term 'reorganization.'" *Id.* (emphasis added). The elimination of positions rendered the agency's actions in *Bacon* a reorganization. As we explained above, no such elimination of positions occurred here.

functions were eliminated, added, or redistributed, as section 351.203 requires. Rather, the decision was made for reasons personal to petitioners: their status as probationary employees. *See Huber v. MSPB*, 793 F.2d 284, 286 (Fed. Cir. 1986) (affirming board's decision that agency did not undertake a reorganization where it relied upon reasons personal to appellant); *Losure v. ICC*, 2 M.S.P.R. 195, 199 (1980) (holding, likewise, that agency did not undertake a reorganization because it relied upon reasons personal to appellant).

*Huber* is analogous. There, the petitioners' positions had been converted from Schedule A positions, which did not have a "confidential and policy-determining character," to Schedule C positions, which did have a "confidential and policy-determining character." 793 F.2d at 286. After the positions were converted, the agency removed petitioners from their positions. *Id.* Although the agency deemed the separation a RIF, the board explained that the agency did not have RIF authority because "[t]he actions taken against the appellants were based on reasons personal to them—essentially, not being 'qualified' for the confidential and policy-related responsibilities involved." *Id.* This Court affirmed and held that, because Schedule C employees were excluded from the appeal rights conferred under chapter 75, a remand to the agency was unnecessary. *Id.* at 288-89. Here, too, DHS and Interior selected the petitioners because of the nature of their appointment—a reason personal to them. *See id.* Just as there was no RIF in *Huber*, there is no RIF here.

### 2. Petitioners Fail To Establish Either That Positions Were Abolished Or That A Reorganization Occurred

Petitioners' argument that the agencies' actions here amounted to a RIF is largely predicated upon their conflation of "reduction in force" and "agency actions taken to reduce headcount." *See, e.g.,* Pet. Br. 28. Even though separating personnel from an agency may reduce an agency's headcount, an action does not constitute a "reduction in force" under part 351 unless (1) the agency determined it was necessary to conduct a RIF, *see* 5 C.F.R. § 351.204; (2) the action abolished a position, *see Tippins*, 93 F.4th at 1375; and (3) pursuant to 5 C.F.R. § 351.201(a)(2), "the release is required" for one of several reasons not applicable here. Petitioners cannot rely upon generic definitions of the phrase "reduction in force" to overcome the precise definition of the phrase used in the regulation and this Court's longstanding interpretation of the phrase. *See Meese v. Keene,* 481 U.S. 465, 484-485 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term")

Petitioners also rely upon a discovery response to the effect that the agencies did not have a plan for replacing petitioners. Pet. Br. 31 (citing Appx1300, Appx2775). But petitioners omit the explanation given by the agency for why no such plan had been created: the employees still "encumber[ed] their positions while on administrative leave pending resolution of the litigation." Appx1300; *see also* Appx2775 (explaining that, because of litigation instituted after the terminations, the agency had been required to rescind its terminations and the personnel "still

encumber their positions"). There was no plan to replace the petitioners at the time that the discovery responses were served because the petitioners still worked for DHS and Interior, which undermines rather than supports petitioners' argument.

Petitioners also rely upon purported references to RIFs and position eliminations in the weeks leading up to the termination of the probationers. *See generally* Pet. Br. 10-16. But, as the board correctly recognized, scattered references in predecisional documents are not enough to convert the agencies' actions here into RIFs.[13] *See* Appx10-11; *Shillinger v. Dep't of Labor*, 47 M.S.P.R. 145, 150 (1991) ("The appellant's mere showing that the agency had previously discussed reorganization . . . does not establish that a reorganization actually occurred."). This is especially so in view of the overwhelming evidence in the record showing that agencies were relying upon their authority to terminate probationary employees. *See Bacon*, 757 F.2d at 269 (declining to look behind "stated reasons" for agency action). And other evidence indicates that the statements focused upon by petitioners were either isolated

[13] Here, as before the board, petitioners improperly rely upon an inadvertently produced document over which Interior claimed the deliberative-process privilege. *See* Pet. Br. 15 (citing Appx2745 for the proposition that Interior used the phrase "positions to be eliminated" (internal quotation marks omitted)). The AJ did not adjudicate Interior's privilege claim because she ruled in Interior's favor on the jurisdictional issue. Appx35 n.6. This document is immaterial, as the AJ correctly recognized. *See id.* But, if the Court were to conclude that this document is material to the jurisdictional analysis, the Court would need to remand to the board to address Interior's claim of privilege.

mistakes,[14] misunderstandings by petitioners,[15] or representations required by a district court injunction before the injunction was stayed by the Supreme Court.[16] Appx10-11; *cf. Holland*, 796 Fed. App's at 1024 (rejecting argument that an agency's mistaken citation of section 315.805 in a Standard Form 50 and 52 indicated that petitioner was in the competitive service, as the "Board's jurisdiction cannot be expanded by an agency's alleged misstatements or erroneous notice of appeal rights." (quoting *Campion v. M.S.P.B.*, 326 F.3d 1210, 1215 (Fed. Cir. 2003)). Even with the benefit of jurisdictional discovery, petitioners have identified nothing that overcomes the AJ's conclusion that the board lacked jurisdiction.

Petitioners also focus upon the fact that, as part of the challenged terminations, the agencies chose not to terminate employees who worked in certain subject areas. *See, e.g.*, Pet. Br. 34-35. But this does not advance petitioners' argument. It shows

---

[14] *Compare* Pet. Br. 16 (quoting email with subject line "RIF numbers") with Appx2400-03 (testimony from Mr. Edwards explaining that the reference in the email was erroneous and no RIF in fact occurred at DHS in February 2025).

[15] *Compare* Pet. Br. 15 (quoting Appx2417) *with* Appx14 (explaining that comment to the effect that "the billet ultimately goes away" was referring to the Deferred Resignation Program, not to the probationary employee terminations).

[16] *Compare* Pet. Br. 14 (quoting statement proposed by DHS's chief human capital officer to the effect that terminations were not performance-based) *with* Appx1284 (showing that proposed statement was made specifically to comply with injunction that instructed DHS to "provide recipients with a written statement, directed to the employee individually, stating that their termination was not 'performance' or fitness based but was made as part of a government-wide mass termination").

only that, in exercising their authority to examine probationary employees' fitness for permanent employment, agencies reasonably considered their need for the type of work performed by the employees. As explained above, a consideration of an employee's fitness necessarily entails a consideration of the agency's needs. Appx13. Petitioners may disagree with how the agencies exercised that authority to make fitness determinations, but the board does not have jurisdiction to entertain such a challenge. *See id.* The agencies' decision to exclude certain roles from the list of terminated positions does not convert an action predicated upon the agencies' exercise of their authority to terminate probationary employees into a RIF.

Petitioners also cite Executive Order 14210, which was issued on February 11, 2025, in support of their argument. *See, e.g.,* Pet. Br. 35. But the separation of probationary employees did not result from this executive order. To the contrary, the identification of probationary employees had begun with a request from OPM issued weeks before, which focused only upon probationary employees. Appx1349-51. Petitioners fail to draw a connection between the executive order and the challenged terminations necessary to establish that the terminations were the product of a RIF. *See Shillinger*, 47 M.S.P.R. at 150.

Petitioners thus cannot show that the agencies conducted RIFs over which the board has jurisdiction.

### III. Petitioners' Separation-of-Power Claims Lack Merit

Petitioners' separation of powers claims, Pet. Br. 53-56, likewise fail.

Petitioners' argument is stated at such a high degree of abstraction that it is difficult to analyze. Their core assertions appear to be that (a) Congress has previously enacted "Reorganization Acts" that authorize certain reorganization powers; (b) that authority has lapsed; (c) the challenged terminations here were "mass terminations" and (d) a "mass termination" can be undertaken only if Congress has granted authority to do so (such as through the Reorganization Act). *See id.* These contentions do not establish a claim based upon a separation-of-powers violation.

First, petitioners did not present this argument to the board in this form. Before the board, in the case brought by Interior probationary employees, they argued that the terminations were directed by OPM in excess of its statutory authority in violation of the Administrative Procedure Act. Appx2688-89. But petitioners did not argue before the board that the power to conduct "mass terminations" belongs to Congress unless it is delegated to the executive branch, as they argue here. *Compare id. with* Pet. Br. 53-56. Petitioners have thus waived this argument. *See Elmore v. Dep't of Transp.*, 421 F.3d 1339, 1342 (Fed. Cir. 2005).

Second, petitioners are effectively alleging that the Government's actions amounted to a RIF that was carried out without following the procedure required by statute and regulations. As we explained above, they are incorrect about this. But even if we accepted this framing, it does not amount to a violation of the U.S. Constitution. The Supreme Court has rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional

separation-of-powers doctrine." *Dalton v. Specter*, 511 U.S. 462, 471 (1994). Rather, the Court explained that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. In reaching this conclusion, the Court "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases). The Court explained that the Constitution is implicated only if executive officers rely on it as an independent source of authority to act or if the officers rely on an unconstitutional statute. *Id.* at 473 & n.5. Thus, "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims[.]" *Id.* at 471. Therefore, petitioners do not get out of the starting gate.

Third, petitioners fail to contend with the fact that the authority to terminate probationary employees has long been a bedrock aspect of executive authority. As we explained above, this was true under the Pendleton Act and it has remained so under the Civil Service Reform Act. Indeed, Congress has used broad language to authorize "[t]he President [to] take such action, including the issuance of rules, regulations, and directives, as shall provide as nearly as conditions of good administration warrant for a period of probation--(1) before an appointment in the competitive service becomes final; and (2) before initial appointment as a supervisor or manager becomes final," 5 U.S.C. § 3321; and has excluded probationary employees from the definition of "employee" that allows for the appeal of adverse actions taken under Chapter 75. 5

U.S.C. § 7511(a)(1)(A). In the face of these legislative enactments and this historical practice, petitioners cite no evidence whatsoever that the decision of whether to remove probationary employees is a matter of legislative prerogative. And even setting aside the fact that petitioners here are probationary employees, the executive has not engaged in an unconstitutional abrogation of legislative powers when it decides to separate employees from Federal employment. *Cf. Am. Fed'n of Gov't Emp.*, *AFL-CIO v. Pierce*, 697 F.2d 303, 307 (D.C. Cir. 1982) (holding unconstitutional a statutory provision which prohibited the use of appropriated funds for the "reorganization of the Department without the prior approval of the Committees on Appropriations" that "precluded HUD from making personnel decisions that ordinarily accompany an agency's programmatic authority."). As the Supreme Court recognized early in our country's history, "[i]n the absence of all constitutional provision, or statutory regulation as to the removal of [inferior] officers, it would seem to be a sound and necessary rule, to consider the power of removal as incident to the power of appointment." *In re Hennen*, 38 U.S. at 259.

Petitioners identify nothing that would give rise to a freestanding claim predicated upon separation-of-powers principles.

## CONCLUSION

The judgment of the board should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

ELIZABETH M. HOSFORD
Assistant Director

/s/ Matthew J. Carhart
MATTHEW J. CARHART
Senior Trial Counsel
Commercial Litigation Branch
Civil Division, U.S. Dept. of Justice
1100 L Street
Washington, D.C. 20005
Tel: (202) 307-0313

*Attorneys for Respondents*

*Of Counsel*:

MICHELLE L. PERRY
Senior Attorney-Advisor
Department of Homeland Security
Washington, DC 20024

RYAN BURTON
Attorney Advisor
Department of the Interior
Lakewood, CO 80215

September 25, 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 13,067 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Matthew J. Carhart*
MATTHEW J. CARHART